

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 9, 2014**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HENRY GONZALEZ AND | § | CASE NO: 13-42661-DML7 |
| FLOR GONZALEZ, | § | CHAPTER 7 |
| DEBTOR(S). | § | |
| | § | |
| TOWER CONSTRUCTION, LP, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO: 13-04103-DML |
| | § | |
| HENRY GONZALEZ AND | § | |
| FLOR GONZALEZ, | § | |
| DEFENDANT(S). | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the court is the *Plaintiff's First Amended Complaint and Determination of Dischargeability and Objection to Debtors' Discharge Pursuant to Sections 523 and 727 of the*

*Bankruptcy Code and for Judgment on Core Proceeding* (the "Complaint"), filed by Tower Construction, L.P. ("Plaintiff") at docket number 42 in the above-captioned adversary proceeding (the "Adversary"). By the Complaint, Plaintiff objects to Debtors' discharge pursuant to Code section 727(a)(5), requests that the court declare non-dischargeable certain debt owed by Debtors to Plaintiff pursuant to Code sections 523(a)(2)(A), 523(a)(4), and/or 523(a)(6), and hold Debtors jointly and severally liable to Plaintiff for certain damages and fees.

The court heard argument with respect to the Complaint on April 22, May 27, and June 16, 2014 (the "Trial"). Following the Trial, the court took the Adversary under advisement. Having reviewed the record, including all underlying pleadings and exhibits relating to the Complaint, the court hereby issues the following findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052. All findings of fact, where appropriate, may be also construed as proposed conclusions of law, and vice versa. These proceedings are subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J).

## I.   FINDINGS OF FACT

1. On or about April 17, 2009, Defendant Henry Gonzalez ("Gonzalez") presented an estimate to Plaintiff (the "Drywall Estimate"), which represented the amount of money Gonzalez estimated he would need to complete the drywall portion of Plaintiff's larger construction project (the "Project").

2. The Drywall Estimate contained a provision stating that Plaintiff would pay for all of the drywall materials by a joint check made out to J&J Contractors, Inc. and a company called Builder's Choice of America for a total amount of $369,309.49.

3. An additional estimate for the same drywall materials was provided by Gonzalez to Plaintiff reflecting the same amount with a breakdown for the different materials and taxes.

4. Through these documents and other oral representations, Gonzalez intentionally misrepresented to Plaintiff that $369,309.49 in drywall supplies that were needed by Defendants to perform the Drywall Subcontract would be purchased through an entity called Builder's Choice of America and would be paid for by joint check to Defendants' company, J&J Contractors, Inc. and Builder's Choice of America.

5. On April 27, 2009, Defendant Flor Gonzalez ("Mrs. Gonzalez") filed an assumed name certificate with the Bexar County, Texas County Clerk creating the assumed name: Builder's Choice of America.

6. On April 29, 2009, Plaintiff accepted the Drywall Estimate and entered into a contract with Defendants to complete the drywall portion of the Project (the "Drywall Subcontract").

7. The Drywall Subcontract identified Defendants as J&J Contractors, Inc. and Gonzalez signed on behalf of J&J Contractors on April 29, 2009.

8. Gonzalez misrepresented to Plaintiff that Builder's Choice of America was a separate entity from Defendants when in fact it was an assumed name taken out by Mrs. Gonzalez two days before Gonzalez executed the Drywall Subcontract.

9. Mrs. Gonzalez made no representations to Plaintiff.

10. J&J Contractors, Inc. was another assumed name of Defendants and was acquired by Defendants on June 1, 2009, two days after the Drywall Subcontract was executed.

11. In her assumed name certificate for J&J Contractors, Inc., Mrs. Gonzalez wrote that the "Inc." designation stood for "incredible."

12. In reliance upon the Drywall Subcontract, and the misrepresentations by Gonzalez relating to the drywall materials as set forth in the Drywall Estimate and as to the true identities

of Builder's Choice of America and J&J Contractors, Inc., Plaintiff released three checks over a 34 day period totaling $310,000.00 made jointly to J&J Contractors, Inc. and to Builder's Choice of America.

13. Gonzalez admits that he knew that this money was to be used for drywall materials.

14. Gonzalez knew he was not going to only buy supplies with that money.

15. These checks were deposited into a bank account set up at Bank of America under the name Builder's Choice of America.

16. The full amount placed into the account was removed within days.

17. It is a stipulated fact that Gonzalez purchased drywall materials for the Project from Lynwood Building Materials, Inc.

18. Verified records from Lynwood Building Materials, Inc. reflect that less than $60,000.00 worth of materials was purchased from them by Gonzalez.

19. Plaintiff relied on Gonzalez's representations.

20. Plaintiff was damaged by the falsehood of those representations.

21. On or about June 25, 2009, Plaintiff entered into an additional subcontract on the Project with Defendants' company J&J Contractors related to painting (the "Painting Subcontract").

22. As with the Drywall Subcontract, the first payment requested by Gonzalez was agreed to be for materials only.

23. The amount for materials Gonzalez requested for the Painting Subcontract was $90,000.00 and was to be paid in a check made jointly to J&J Contractors and to Kelly-Moore Paint Company.

24. Based upon Gonzalez's representations, on or about August 6, 2009, a check for $90,000.00 was issued by Plaintiff made out jointly to Kelly-Moore Paint and J&J Contractors, Inc. and provided to Kelly-Moore Paint.

25. As with the Drywall Subcontract materials, Gonzalez again admits that he knew this money was solely for the purpose of purchasing painting materials for the Project.

26. However, Gonzalez also admits that he received a check for $60,000.00 of this same money back from Kelly-Moore.

27. Gonzalez admits to executing or causing execution of a document entitled "Joint Check and Waiver Agreement."

28. The Joint Check and Waiver Agreement is an agreement purportedly signed by Gonzalez and an unknown person instructing Kelly-Moore to release $60,000.00 in funds to Defendants.

29. The consent of Plaintiff is forged on the Joint Check and Waiver Agreement with the name of Plaintiff's management corporation "FaulknerUSA" misspelled on the document.

30. As with the Drywall Materials money, the $60,000.00 J&J Contractors received from Kelly-Moore Paint was deposited in one of Defendants' Bank of America Accounts and the account was emptied within four weeks of deposit.

31. Gonzalez's misrepresentations as outlined in Paragraphs 1-30 above were material.

32. In reliance upon such misrepresentations Plaintiff advanced large sums of money in joint checks to Gonzalez, and Mrs. Gonzalez set up an entity meant by Gonzalez to trick Plaintiff in the case of the Drywall Subcontract money.

33. In reliance upon such misrepresentations, Plaintiff also advanced a large joint check to Gonzalez under the Paint Contract. Gonzalez used a fake Joint Check and Waiver Agreement to obtain two-thirds of the money meant for painting supplies from Kelly-Moore.

34. The funds advanced to Gonzalez for the purpose of purchasing construction materials did not give rise to a fiduciary relationship with Plaintiff.

35. Each of the representations made by Gonzalez as set out above was false and, to the extent prospective, was planned to deceive Plaintiff.

36. Each of the misrepresentations made by Gonzalez as set out above was material.

37. At the time Gonzalez made each of the misrepresentations set out above, he knew the representation was false.

38. Gonzalez made each of the above misrepresentations with the intent that Plaintiff act on it.

39. Plaintiff relied upon each of the misrepresentations by paying Defendants large sums of money during the work under those contracts.

40. Plaintiff was injured by the misrepresentations by paying monies for drywall and painting materials it never received.

41. Plaintiff has incurred attorney fees in the amount of $46, 124.45 to pursue this matter.

42. Plaintiff has incurred expenses in the amount of $16,460.63 to pursue this matter.

## II. CONCLUSIONS OF LAW

1. Plaintiff is entitled to a judgment for actual damages for fraud.

2. Plaintiff is entitled to a judgment for attorney fees.

3. Plaintiff is entitled to a judgment for court costs.

4. The resulting judgment for Plaintiff is non-dischargeable as to Gonzalez pursuant to 523(a)(2)(A) in that his conduct meets the requisite elements of false representation or pretense (dealing with past or current facts) and the alternate elements of actual fraud theory which is not limited to misrepresentations describing past or current facts.

5. The resulting judgment for Plaintiff is non-dischargeable as to Gonzalez pursuant to 523(a)(6) due to him having caused willful and malicious injury to Plaintiff as outlined by the facts above.

6. Plaintiff has not proven Mrs. Gonzalez should not be discharged of the debt to Plaintiff.

7. Plaintiff has not proven Defendants should be denied a discharge generally.

Plaintiff's counsel is directed to submit a judgment consistent with the foregoing.

### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###